**Drexel B. ODEN, Appellant,**

v.

**Dr. Walford D. MARRS, Dr. Juan Watkins, Dr. Harold Quinn, and Drs. Pou, Quinn, Watkins & Thornton, a Medical Corporation, Appellees.**

No. 06–93–00115–CV.

Court of Appeals of Texas, Texarkana.

Submitted April 19, 1994.

Decided June 14, 1994.

Jim Ammerman, II, Marshall, for appellant.

Douglas R. McSwane, Jr., and Michael E. Starr, Potter, Minton, Davis, Roberts, Tyler, for Marrs.

Jay N. Green, Potter, Minton, Davis, Roberts, Tyler, for Watkins, Quinn, Drs. Pou, Quinn, Watkins & Thornton.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

CORNELIUS, Chief Justice.

This is a medical malpractice action. Drexel B. Oden appeals from the trial court's summary judgment in favor of Dr. Walford D. Marrs and the court's order sustaining the objection to jurisdiction of Dr. Juan Watkins, Dr. Harold Quinn, and Drs. Pou, Quinn, Watkins & Thornton, a Medical Corporation.

Drexel B. Oden was employed by the Union Pacific Railroad (also known at various times as Texas and Pacific Railway Company and Missouri and Pacific Railway Company) from 1948 until his retirement in 1985. On February 14, 1975, the Railroad's chief medical officer sent Oden to Dr. Walford D. Marrs in Fort Worth for an examination of Oden's hearing. The examination was ordered because Oden had complained to his supervisor about hearing loss and problems understanding instructions and radio communications. This and subsequent examinations were, according to Oden, all ordered by Dr. Ernest T. Rouse, Jr., chief medical officer for the Railroad. The results of the exam were given to the Railroad. Oden did not request and did not receive any information regarding Marrs's evaluation. Oden stated by affidavit that he "got the impression" that Marrs would tell him if anything was wrong or if he should avoid certain activities. Oden was later informed by the Railroad that, due to the findings of Marrs, he was disqualified from his position as car foreman in Fort Worth.

Oden then sought employment at the Railroad shops in Marshall where, due to a union contract, he had a right to return to work if he could pass a less stringent hearing exam. He was given a simple verbal hearing test by Dr. H.P. Bray of Marshall. Bray approved his employment. On February 26, 1975, the Railroad sent Oden to Dr. Juan Watkins in Shreveport, Louisiana, for another hearing test. After this test, his supervisor informed him that he had again been authorized for employment as a car foreman. Watkins reported the results of this test to the Railroad.

Thereafter, Oden continued to work for the Railroad and was given a yearly hearing examination by Watkins or Dr. Harold Quinn at the offices of Drs. Pou, Quinn, Watkins (and later Thornton), scheduled and paid for by the Railroad, through 1979. The doctors also reported the results of these exams directly to the Railroad.

In 1985, Oden took early retirement, partly, according to his affidavit, because of his hearing problems and the accompanying stress. Oden's hearing deteriorated further, and on April 7, 1989, having read about claims for hearing damage brought by Railroad employees, Oden had his hearing tested by Dr. Timothy Trone of Texarkana. Trone informed Oden that he had sensori-neural hearing loss, commonly caused or aggravated by extended exposure to high noise levels.

Several months later, Oden filed suit against the Railroad.[1]

On January 29, 1991, Oden went to Shreveport and obtained copies of the records of his hearing tests. The records included reports, correspondence, and results of the tests of all the doctors, including the test conducted by Marrs in Fort Worth. On May 6, 1991, in his second amended original petition, Oden filed suit against Marrs, Watkins, Dr. Harold Quinn and Drs. Pou, Quinn, Watkins & Thornton, a Medical Corporation, to recover damages for their alleged medical malpractice. Oden alleged that, because the doctors failed to inform him of his hearing damage and that it was caused or aggravated by his exposure to the high noise level at the railroad yards, he unwittingly continued to work in the dangerous environment and suffered further damage to his hearing.

Watkins, Quinn, and Drs. Pou, Quinn, Watkins & Thornton made a special appearance pursuant to Tex.R.Civ.P. 120a to challenge the trial court's exercise of personal jurisdiction over them. The court sustained their objection. The court later severed Oden's claims against those defendants from the remainder of the cause of action, thus enabling Oden to appeal their successful challenge to jurisdiction.

On November 18, 1993, the court granted Marrs's motion for summary judgment. In its order the court also severed Oden's cause of action against Marrs from the remainder of Oden's claims. This appeal ensued.

We first consider the propriety of the summary judgment in Marrs's favor. To be entitled to summary judgment, a defendant must establish by undisputed summary judgment evidence that the plaintiff cannot prevail on one or more of the essential elements of his cause of action. Tex.R.Civ.P. 166a(c); *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true, and every reasonable inference must be indulged and every doubt resolved in the nonmovant's favor. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

■ The appellate court may consider only the evidence before the trial court at the time of the hearing on the motion for summary judgment. *Hush Puppy of Longview, Inc. v. Cargill Interests, Ltd.,* 843 S.W.2d 120, 122 (Tex.App.—Texarkana 1992, no writ). Based on this evidence, the reviewing court must render the judgment that should have been rendered by the trial court. *See Members Mut. Ins. Co. v. Hermann Hosp.,* 664 S.W.2d 325, 328 (Tex.1984). Only issues expressly presented to the trial court by written motion, answer, or other response may be considered on appeal. Tex.R.Civ.P. 166a(c); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 677 (Tex.1979).

■ We may neither reverse nor affirm a summary judgment on any ground not specifically presented in the motion for summary judgment. *See Travis v. City of Mesquite,* 830 S.W.2d 94, 100 (Tex.1992). In determining whether grounds are expressly presented, reliance may not be placed on briefs or summary judgment evidence. *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 341 (Tex.1993).

Marrs's motion for summary judgment relied on the following grounds: the suit was barred by the two-year statute of limitations; because there was no physician-patient relationship between Marrs and Oden, Marrs owed no duty to inform Oden of the hearing loss, but only a duty not to injure him during the examination; if there was a physician-patient relationship, Marrs exercised the requisite standard of care in his examination; and Marrs did not proximately cause any damage to Oden.

■ The trial court's order does not specify the grounds on which the judgment was based. Nothing in the record indicates that the trial court based its decision on any

---

1. The exact date of this original suit is not ascertainable from the record. Oden's original petition is listed as part of the transcript but is not included in the transcript. In addition, it is not clear whether Dr. Rouse was sued as part of the original suit or was later added as a defendant along with the other physicians.

specific ground raised in the motion for summary judgment. Therefore, we will affirm the judgment if any one of the theories raised in the motion was meritorious. *Rogers v. Ricane Enters., Inc.,* 772 S.W.2d 76, 79 (Tex.1989).

■ Marrs urged that Oden's claim is barred by the two-year statute of limitations. Assuming for the purposes of this theory that Marrs owed a duty to tell Oden about the cause of his injury but failed to do so, the breach of that duty occurred on February 14, 1975, the date Marrs examined Oden. Oden did not file suit against Marrs until sixteen years later, on May 6, 1991. To excuse his delay, Oden contends that he did not discover and could not have reasonably discovered his injury until April 7, 1989, the date he was examined by Dr. Trone in Texarkana, and that he did not discover Marrs's failure to tell him of the diagnosis and warn him about continued exposure to loud noises until January 29, 1991, when he obtained records of Marrs's examination from the Shreveport clinic. He claims that he first discovered from these reports that Marrs had diagnosed the same condition as Dr. Trone had diagnosed. Oden contends that Trone's examination merely made him aware of his cause of action against the Railroad, and that he was not aware that he had a cause of action against Marrs until the date he obtained the records. He argues, therefore, that the statute of limitations did not begin to run until January 29, 1991, the date he obtained the records, and his suit against Marrs was well within the two-year time period.

Because the alleged tort occurred on February 14, 1975, Oden's claim is governed by the statute of limitations in effect at that time. *See Baldridge v. Howard,* 708 S.W.2d 62, 63–64 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). The former statute reads, in part:

> There shall be commenced and prosecuted within two years after the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description:
>
> . . . .

6. Action for injury done to the person of another.

Tex.Rev.Civ.Stat.Ann. art. 5526 (Vernon 1958), *repealed by* Act of May 17, 1985, 69th Leg., ch. 959, § 9, 1985 Tex.Gen.Laws. 3322. The provisions of Article 5526 and the current law [2] are essentially the same. *See Nelson v. Krusen,* 678 S.W.2d 918, 920 n. 1 (Tex.1984). In *Baldridge, supra,* the court applied the same analysis and reached the same result under both statutes.

Although Article 5526 required a plaintiff to file a medical malpractice lawsuit within two years of an injury, the two-year time period ran from the date an injury was or should have been discovered. *Weaver v. Witt,* 561 S.W.2d 792, 793–94 (Tex.1977). Although the Supreme Court has held that the traditional discovery rule has been abolished in cases governed by the current law, *Morrison v. Chan,* 699 S.W.2d 205, 208 (Tex.1985), the discovery rule still applies to cases governed by Article 5526. *See Weaver v. Witt, supra.*

In summary judgment cases, the movant has the burden to negate the discovery rule. *Woods v. William M. Mercer, Inc.,* 769 S.W.2d 515, 518 n. 2 (Tex.1988) (citing *Weaver v. Witt,* 561 S.W.2d at 794). We determine, then, whether Marrs negated the discovery rule by proving as a matter of law that Oden discovered or should have discovered the alleged breach of duty by Marrs more than two years before he filed suit. *See Krueger v. Gol,* 787 S.W.2d 138, 140 (Tex.App.—Houston [14th Dist.] 1990, writ denied).

The records of Marrs's examination of Oden reflect only that a hearing examination took place, that its purpose was to determine if Oden was qualified to be a foreman, that the exam was performed at the request of the Railroad, and that Marrs did not recommend that Oden be employed as a foreman. Attached to the examination form is an audiogram listing a series of frequency numbers on the left side, and on the side across from those numbers, other numbers apparently indicating hearing loss for each ear at the noted frequencies. There is a notation on

2. Tex.Rev.Civ.Stat.Ann. art. 4590i, § 10.01 (Vernon Supp.1994).

the examination form under the heading "REMARKS AND ABNORMAL FINDINGS," "Drums appear possibly a little sclerotic, not really remarkable," apparently indicating a slight hardening of the ear drums, possibly from inflammation or disease. *See* DORLAND'S MEDICAL DICTIONARY 1496 (27th ed. 1988). Nothing in Marrs's reports indicates that the cause of Oden's hearing loss was sensori-neural hearing loss, as diagnosed by Dr. Trone. The report itself indicates only that he had experienced hearing loss. Oden obviously already knew that, because he initiated the Railroad's scheduling of the exam by complaining to his supervisor about his hearing problems.

Despite Oden's contention, the records of Marrs's examination simply cannot be read to support his claim that Marrs made the same diagnosis that Trone later made. Marrs's records gave Oden no information that he did not already have. Thus, at the very latest, Oden was aware of his alleged injury on April 9, 1989, the date of Trone's examination. As Oden was aware of his injury on that date, he should also have been reasonably aware of any cause of action against Marrs. At best, then, the discovery rule tolled the running of limitations until the date of Trone's examination, April 29, 1989. The suit against Marrs should have been filed within two years of that date. Oden's suit, filed on May 6, 1991, was therefore barred by the statute of limitations. Summary judgment on that basis was proper.

■ In his second point of error, Oden complains that the trial court erred in sustaining objections to jurisdiction of the Shreveport appellees—Dr. Juan Watkins, Dr. Harold Quinn, and Drs. Pou, Quinn, Watkins & Thornton, a Medical Corporation. He argues that the doctors failed to satisfy their burden of proving lack of jurisdiction by negating every possible ground for personal jurisdiction. *See Kawasaki Steel Corp. v. Middleton,* 699 S.W.2d 199, 203 (Tex.1985).

■ For a Texas court to exercise jurisdiction over a nonresident defendant, a Texas "longarm" statute must authorize the exercise of jurisdiction, and the exercise of jurisdiction must be consistent with federal and state constitutional guarantees of due pro-

cess. *Schlobohm v. Schapiro,* 784 S.W.2d 355, 356 (Tex.1990). A Texas statute authorizes the exercise of jurisdiction over nonresidents doing business in Texas. TEX.CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1986). The statute lists particular acts that constitute doing business, but it also provides that the list is not exhaustive and that other acts may also constitute doing business. *Id.* The broad language of the statute allows the jurisdiction of Texas courts to reach as far as the federal constitutional requirements of due process will permit. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays,* 815 S.W.2d 223, 226 (Tex.1991).

■ Due process requires that the out-of-state defendant has had minimum contacts with Texas and that the assertion of jurisdiction by the Texas court comports with traditional notions of fair play and substantial justice. *See Asahi Metal Indus. Co. v. Superior Court of California,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

■ Under the first prong of the test, we determine whether the nonresidents had contacts sufficient to establish a substantial connection with Texas. The substantial connection must arise from conduct of the nonresidents that is purposefully directed toward Texas. *Guardian Royal Exch. v. English China Clays,* 815 S.W.2d at 230. It is possible for a single act to support jurisdiction if it creates a substantial connection with the forum state, *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528, 543 n. 18 (1985), but the contact must be such that the prospect of being sued in the forum state is reasonably foreseeable. Moreover, a nonresident may not be subjected to a state's jurisdiction solely by the unilateral actions of one party nor because of random or fortuitous events. *Burger King Corp. v. Rudzewicz,* 471 U.S. at 474–75, 105 S.Ct. at 2183, 85 L.Ed.2d at 542. The minimum contacts analysis examines those contacts that justify specific jurisdiction and those that justify general jurisdiction. *Guardian Royal Exch. v. English China Clays,* 815 S.W.2d at 227. For specific jurisdiction, the cause of action must actually arise out of or relate to the nonresident's

contacts with the forum state. *Id.* General jurisdiction may be exercised when the cause of action does not relate to the contacts, but there are continuous and systematic contacts between the nonresident and the forum state. *Id.* at 228. General jurisdiction is a more demanding standard and requires a showing of substantial activities by the defendant in the forum state. *Id.*

Here, the Railroad sent Oden to Shreveport to have his hearing examined at the appellees' clinic. Oden drove from Marshall to Shreveport and was first tested by Dr. Watkins on March 12, 1975. The examination was scheduled and paid for by the Railroad, under the direction of Dr. Ernest T. Rouse, the Chief Medical Officer of the Railroad, from his office in St. Louis, Missouri. The report and the clinic's bill were sent to St. Louis, although the findings were also reported to Oden's supervisors in Marshall. After the initial examination, there were four more annual examinations in Shreveport, all under similar circumstances as the first. These took place on March 24, 1976, March 24, 1977, March 31, 1978, and April 20, 1979. Thus, the nonresidents' only contact with Texas was that Oden lived and worked in Texas, and copies of some of the medical reports, the originals of which were sent to the Railroad in St. Louis, were sent to Oden's supervisors in Marshall, Texas.

The record does not support a finding of minimum contacts to support either specific or general jurisdiction. Nothing indicates that the Shreveport doctors purposefully conducted activities in Texas that would invoke the benefits and protections of its laws. *See Burger King Corp. v. Rudzewicz,* 471 U.S. at 474–75, 105 S.Ct. at 2183, 85 L.Ed.2d at 542. They committed no tort in Texas, they do not live or maintain a place of business in Texas, and they do not have an agent for service of process in Texas. The only contract they had was with the Railroad, and all performance under the contract occurred outside this state. Nothing in the record indicates that the doctors engaged in any conduct for the purpose of attracting patients from Texas. Absent conduct purposefully directed toward Texas, there is no substantial connection with Texas and no minimum contacts with Texas. *Guardian Royal Exch. v. English China Clays,* 815 S.W.2d at 230.

Oden essentially relies on one case, *Product Promotions, Inc. v. Cousteau,* 495 F.2d 483 (5th Cir.1974), to support jurisdiction. In *Cousteau,* the defendants voluntarily made a contract with Texas residents. The contract was made in Texas and required some performance in Texas. *Id.* at 497. As the court in *Cousteau* noted, the nonresident voluntarily entered into a transaction with one it knew to be a Texas resident, a transaction which had a substantial connection with Texas and which the nonresidents had reason to know could have consequences in Texas. *Id.* Those deliberate contacts made it foreseeable that the defendants could be sued in Texas despite their not being physically present in Texas. *Id.* Although the doctors here were probably aware that their examination of Oden would have some consequences in Texas, since it would qualify or disqualify him for employment as a car foreman in Marshall, that is nothing more than a fortuitous circumstance and is not sufficient to warrant jurisdiction. *See Burger King Corp. v. Rudzewicz,* 471 U.S. at 475, 105 S.Ct. at 2183, 85 L.Ed.2d at 542. The unilateral act by the Railroad in scheduling Oden's examination in Shreveport is likewise insufficient. The out-of-state doctors should not be subject to jurisdiction simply because the patient who enters their office happens to reside and work in Texas. *See Wright v. Yackley,* 459 F.2d 287, 289–90 (9th Cir.1972); *Clark v. Noyes,* 871 S.W.2d 508 (Tex.App.—Dallas 1994, n.w.h.).

As there was no minimum contact, we need not review the second prong of the *Burger King* test, i.e., whether the assertion of jurisdiction comports with the notions of fair play and substantial justice. *See In re S.A.V.,* 837 S.W.2d 80, 85 (Tex.1992). The trial court correctly sustained the objection to jurisdiction over the nonresident doctors.

The judgment of the trial court is affirmed.