**Ardis Noreen TOWNSEND, et al., Appellants,**

v.

**UNIVERSITY HOSPITAL–UNIVERSITY OF COLORADO, et al., Appellees.**

No. 06–02–00021–CV.

Court of Appeals of Texas, Texarkana.

Submitted July 12, 2002.

Decided Aug. 13, 2002.

914

 

 

 

 

 

 

 

 

 

 

 

 

 

William L. Kirkman, Bourland, Kirkman, Seidler & Evans, LLP, Michael W. Johnston, Johnston & Associates, LLP, Fort Worth, for appellant. Greg W. Curry, Debora B. Alsup, Aditi R. Dravid, Thompson & Knight, LLP, Dallas, for appellee.

Before MORRISS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice ROSS.

Ardis Noreen Townsend, Julian E. "Pete" Townsend, Javier Olivares, and Alex Olivares, a minor, by and through his next friend and father, John Olivares (the Townsends) appeal the trial court's dismissal of their case against University Hospital–University of Colorado (UCH), University of Colorado Health Sciences Center (UCHSC), David B. Badesch, M.D., F.A.C.P., Michael C. Thigpen, M.D., Norbert F. Voelkel, M.D., Lazaro E. Gerschenson, M.D., Randall Williams, M.D., Bertron M. Groves, M.D., and the individual members of the Institutional Review Board for UCH from January 1, 1998 to May 1999 (the Colorado defendants). None of the Colorado defendants are residents of Texas, and the dismissal was granted after they entered a special appearance.

The Townsends bring two points of error, contending: 1) the Colorado defendants are subject to the specific jurisdiction of the State of Texas because they knowingly accepted a referral of a patient

from Texas and because their agents' actions took place in Texas, and 2) the Colorado defendants are subject to the general jurisdiction of the State of Texas.

The Townsends filed suit against the Colorado defendants for fraud, intentional infliction of emotional distress, assault, assault and battery, intentional abandonment, breach of fiduciary duties, breach of the duty of good faith and fair dealing, violations of the Deceptive Trade Practices Act, constructive fraud, negligence, gross negligence, negligent abandonment, negligent infliction of emotional distress, negligent breach of fiduciary duty, and malpractice under the common law, including lack of informed consent and *res ipsa loquitur* or, if applicable, the Texas Medical Liability and Insurance Improvement Act of 1977, in relation to the death of Julia Caren Townsend Olivares while in the care of the Colorado defendants.

Olivares received a medical consultation from Dr. Luisa Gan at the Mesquite Medical Center for bronchial problems after going to the emergency room complaining of extreme shortness of breath and coughing up blood. Gan transferred Olivares to Medical City of Dallas, where Dr. David Weill examined Olivares. Weill concluded Olivares' pulmonary hypertension was too advanced to be treated at Medical City and recommended she be transferred to the Pulmonary Hypertension Center at UCH in Denver, Colorado. Olivares was airlifted to UCH, arriving February 16, 1999.

Olivares remained at UCH for approximately one week. UCH treated Olivares until her sudden death February 21, 1999. An autopsy revealed she died of complications associated with a disease of her lungs called primary pulmonary hypertension, but the autopsy did not reveal which complications occurred and resulted in Olivares' death.

After being sued in Texas, the Colorado defendants filed a special appearance contesting personal jurisdiction. The Colorado defendants asserted they: 1) are not citizens of the State of Texas; 2) are not licensed to practice medicine in Texas; 3) do not practice medicine in Texas; 4) do not do business in Texas; 5) own no property, leases, or investments in Texas; 6) have never paid taxes in Texas; 7) have not committed any tort in Texas; 8) have not entered into any contracts with Texas residents for the provision of medical care or treatment or for the referral of patients; and 9) have not appointed any agent for service of process in Texas and are not required to do so. The Colorado defendants further contend that the Townsends' causes of action did not arise from or relate to any contacts with Texas by the Colorado defendants and that the Colorado defendants did not and do not have continuous or systematic contacts with Texas. After conducting a hearing on the special appearance, the trial court granted the Colorado defendants' motion to dismiss pursuant to their special appearance and dismissed all the Townsends' causes of action for lack of personal jurisdiction.

In their first point of error, the Townsends contend the trial court erred in dismissing their case because the Colorado defendants are subject to specific jurisdiction. A nonresident defendant must negate all bases of personal jurisdiction to prevail in a special appearance. *CSR Ltd. v. Link*, 925 S.W.2d 591, 596 (Tex.1996); *LeBlanc v. Kyle*, 28 S.W.3d 99, 101 (Tex. App.-Texarkana 2000, pet. denied). Whether a court can assume personal jurisdiction over a nonresident defendant is a question of law that we review de novo. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (2002); *Hotel Partners*

*v. Craig,* 993 S.W.2d 116, 120 (Tex.App.-Dallas 1994, writ denied). We review the trial court's resolution of any underlying factual questions for factual sufficiency of the evidence. *LeBlanc,* 28 S.W.3d at 101 n. 2. We will affirm if we can uphold the trial court's order on any legal theory finding support in the evidence. *See Happy Indus. Corp. v. Am. Specialties, Inc.,* 983 S.W.2d 844, 847 (Tex.App.-Corpus Christi 1998, pet. dism'd w.o.j.); *see also Cartlidge v. Hernandez,* 9 S.W.3d 341, 345 (Tex. App.-Houston [14th Dist.] 1999, no pet.); *Transportacion Especial Autorizada, S.A. de C.V. v. Seguros Comercial Am., S.A. de C.V.,* 978 S.W.2d 716, 719 (Tex.App.-Austin 1998, no pet.); *Fish v. Tandy Corp.,* 948 S.W.2d 886, 892 (Tex.App.-Fort Worth 1997, writ denied); *Clark v. Noyes,* 871 S.W.2d 508, 511–12 (Tex.App.-Dallas 1994, no writ); *NCNB Tex. Nat'l Bank v. Anderson,* 812 S.W.2d 441, 445 (Tex.App.-San Antonio 1991, no writ).

■ When a personal jurisdictional question is reviewed, we review all the evidence. *See Nikolai v. Strate,* 922 S.W.2d 229, 236 (Tex.App.-Fort Worth 1996, writ denied); *Hotel Partners v. KPMG Peat Marwick,* 847 S.W.2d 630, 632 (Tex.App.-Dallas 1993, writ denied). But the review is not a de novo review. The proper standard for reviewing the evidence in a case involving a challenge to *in personam* jurisdiction is factual sufficiency. *See Nikolai,* 922 S.W.2d at 236; *Hotel Partners,* 847 S.W.2d at 632. Thus, we may reverse the decision of the trial court only if its ruling is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *See In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951); *Runnells v. Firestone,* 746 S.W.2d 845, 849 (Tex.App.-Houston [14th Dist.] ), *writ denied,* 760 S.W.2d 240 (Tex.1988) (per curiam). In

reviewing such a point of error, we must consider and weigh all of the evidence, both the evidence that tends to prove the existence of a vital fact as well as evidence that tends to disprove its existence. *See Ames v. Ames,* 776 S.W.2d 154, 158–59 (Tex.1989); *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). So, considering the evidence, if a finding is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, the point should be sustained, regardless of whether there is some evidence to support it. *Watson v. Prewitt,* 159 Tex. 305, 320 S.W.2d 815, 816 (1959); *King's Estate,* 244 S.W.2d at 661.

■ If evidence supports the implied findings of fact, we must uphold the trial court's judgment on any legal theory supported by the evidence. *See Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990); *Point Lookout W., Inc. v. Whorton,* 742 S.W.2d 277, 278 (Tex.1987); *Runnells,* 746 S.W.2d at 848. This is so regardless of whether the trial court articulates the correct legal reason for the judgment. *See Harrington v. R.R. Comm'n,* 375 S.W.2d 892, 895 (Tex.1964); *Marifarms Oil & Gas, Inc. v. Westhoff,* 802 S.W.2d 123, 125 (Tex.App.-Fort Worth 1991, no writ).

A court may assert personal jurisdiction over a nonresident defendant only if the requirements of both the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the Texas long-arm statute are satisfied. U.S. CONST. amend. XIV, § 1; TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997); *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 413–14, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *CSR Ltd.,* 925 S.W.2d at 594. The Texas Supreme Court has consistently interpreted the long-arm statute as reaching "as far as the federal constitutional requirements of due process will allow." *Guardian Royal*

**920**

*Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex. 1991).

Under the Due Process Clause, a defendant must have certain minimum contacts with the forum such that maintaining suit there will not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). A nonresident defendant that has purposefully availed itself of the privileges and benefits of conducting business in the foreign jurisdiction has sufficient contacts with the forum to confer personal jurisdiction. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). However, a defendant should not be subject to the jurisdiction of a foreign court based on "random," "fortuitous," or "attenuated" contacts. *Id.,* 471 U.S. at 475, 105 S.Ct. 2174.

The Texas Supreme Court has articulated a three-pronged formula to ensure compliance with the federal standard: 1) there must be a "substantial connection" between the nonresident defendant and Texas arising from action or conduct of the nonresident defendant purposefully directed toward Texas; 2) the cause of action must arise out of or relate to the defendant's contacts with Texas (specific jurisdiction), or if not, the defendant's contacts with Texas must be continuing and systematic (general jurisdiction); and 3) assumption of jurisdiction must not offend traditional notions of fair play and substantial justice. *In re S.A.V.,* 837 S.W.2d 80, 85 (Tex.1992). Neither the Texas formula nor any other test for personal jurisdiction should be applied mechanically. *Schlobohm v. Schapiro,* 784 S.W.2d 355, 358 (Tex.1990).

In determining the latter prong of the Texas formulation, due consideration should be given to: 1) the burden on the defendant; 2) the interests of the forum state in adjudicating the dispute; 3) the plaintiff's interest in obtaining convenient and effective relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and 5) the shared interest of the several states in furthering fundamental substantive social policies. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Guardian Royal Exch. Assurance, Ltd.,* 815 S.W.2d at 228.

Specific jurisdiction is established if the defendant's alleged liability arises from or is related to an activity conducted within the forum. *CSR Ltd.,* 925 S.W.2d at 595. The Townsends contend Weill was an agent of the Colorado defendants because he formerly practiced at UCH. The Colorado defendants all practiced in Colorado, none owned property or paid taxes in Texas, none were licensed to practice medicine in Texas, none advertised services in any Texas newspaper, magazine, telephone book, or other print media, or on any Texas radio or television network. All patients seeking treatment from the Colorado defendants traveled to Colorado; none of the Colorado defendants traveled to Texas or any other state to render care. All of the care received by Olivares by the Colorado defendants occurred in Colorado. Olivares was not enrolled in any research study being performed by UCH or UCHSC; the Colorado Multi–Institutional Board had no contact with Olivares or her family before, during, or after her treatment at UCH; none of the Colorado doctors had any contact with Olivares before her admission to UCH; the decision to transfer Olivares to UCH was Weill's independent decision

made after consulting with Olivares and other Texas physicians; and no one at UCH or UCHSC encouraged or influenced Weill to transfer Olivares to Colorado. Most of the Colorado doctors do not know Weill. Badesch and Voelkel know Weill, but stated in their affidavits they did not solicit Weill for the transfer of Olivares. None of the Colorado doctors contracted with Weill or any other Texas doctor or hospital for the referral of Texas patients. The Colorado defendants' only contact with Texas was that Olivares lived in Texas and her body was returned to Texas after her death in Colorado. Out-of-state doctors should not be subject to jurisdiction simply because the patient who receives treatment at their office happens to reside and work in Texas. *Oden v. Marrs,* 880 S.W.2d 451, 457 (Tex.App.-Texarkana 1994, no writ); *see Wright v. Yackley,* 459 F.2d 287, 289–90 (9th Cir.1972); *Clark v. Noyes,* 871 S.W.2d 508, 515–16 (Tex.App.-Dallas 1994, no writ) (refusing to exercise jurisdiction when nonresident patient sought treatment in doctor's home state). Specific jurisdiction over the Colorado defendants does not arise merely because they treated a Texas resident in their home state.

■ The Townsends contend the Colorado defendants purposefully recruited Olivares to enter their program and acted through their Texas agent to do so, thereby creating the actions and conduct in Texas necessary to exercise specific jurisdiction. The Colorado defendants' evidence is unequivocal: Weill is not their agent. Weill's affidavit states that he was not solicited by anyone at UCH or UCHSC to transfer any patient, including Olivares, and that no doctor or staff person at UCH or UCHSC ever solicited him or contracted with him for patient referrals. Weill also stated he never sought or re-

ceived any kind of payment for the transfer of Olivares to UCH.

■ We cannot presume an agency relationship exists. *Gutierrez v. Deloitte & Touche,* —— S.W.3d ——, ——, No. 04–01–00637–CV, 2002 WL 458898, at *6, 2002 Tex.App. LEXIS 2195, at *18 (Tex. App.-San Antonio Mar.27, 2002, no pet. h.); *Johnson v. Owens,* 629 S.W.2d 873, 875 (Tex.App.-Fort Worth 1982, writ ref'd n.r.e.). An agency relationship may be found from underlying facts or direct and circumstantial evidence showing the relationship of the parties. *Elite Towing, Inc. v. LSI Fin. Group,* 985 S.W.2d 635, 643 (Tex.App.-Austin 1999, no pet.). An "agent" is one who is authorized by a person or entity to transact business or manage some affair for the person or entity. *Neeley v. Intercity Mgmt. Corp.,* 732 S.W.2d 644, 646 (Tex.App.-Corpus Christi 1987, no writ). An essential element of the principal-agent relationship is the alleged principal's right to control the actions of the alleged agent. *Sendjar v. Gonzalez,* 520 S.W.2d 478, 481 (Tex.Civ.App.-San Antonio 1975, no writ). This right includes not only the right to assign tasks, but also the right to dictate the means and details of the process by which an agent will accomplish the task. *Johnson,* 629 S.W.2d at 875. The evidence clearly shows Weill was not an agent of any of the Colorado defendants. Although at one time he may have been a resident at UCH, the evidence is uncontroverted that, at the time he referred Olivares to UCH, he worked at a hospital in Dallas, Texas, and received no orders or money from any of the Colorado defendants. The evidence is factually sufficient to support the trial court's implied finding that Weill was not an agent of any of the Colorado defendants.

Because there is no "substantial connection" between the Colorado defendants and Texas arising from action or conduct of the

Colorado defendants purposefully directed toward Texas, we overrule the Townsends' first point of error. *See S.A.V.*, 837 S.W.2d at 85.

In their second point of error, the Townsends contend the trial court erred in finding it lacked personal jurisdiction over the Colorado defendants. The Townsends contend the Colorado defendants advertised their program and services over the internet, thereby granting Texas general jurisdiction. Under general jurisdiction standards, the cause of action need not arise from or relate to the activities conducted within the forum state by the nonresident defendant. *CSR Ltd.*, 925 S.W.2d at 595. In such cases, however, the minimum contacts analysis becomes more demanding; the contacts must be "substantial." *Id.; Guardian Royal Exch. Assurance, Ltd.*, 815 S.W.2d at 228. When general jurisdiction is alleged, there must be "continuous and systematic contacts" between the nonresident defendant and Texas. *CSR Ltd.*, 925 S.W.2d at 595; *Guardian Royal Exch. Assurance, Ltd.*, 815 S.W.2d at 228.

Internet use is characterized as falling within three categories, on a sliding scale, for purposes of establishing personal jurisdiction. *Michel v. Rocket Eng'g Corp.*, 45 S.W.3d 658, 677 (Tex.App.-Fort Worth 2001, no pet.); *Jones v. Beech Aircraft Corp.*, 995 S.W.2d 767, 772 (Tex. App.-San Antonio 1999, pet. dism'd w.o.j.), *overruled on other grounds, BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789 (2002); *see also Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir.1999). At one end of the scale are websites clearly used for transacting business over the internet, such as entering into contracts and knowing and repeated transmission of files of information, which may suffice to estab-

lish minimum contacts within a state. *Jones*, 995 S.W.2d at 772. At the other end are "passive" websites, used only for advertising over the internet, which are not sufficient to establish minimum contacts, even though they are accessible to residents of a particular state. In the middle are "interactive" websites, which allow "exchange" of information between a potential customer and the host computer. *Jones*, 995 S.W.2d at 772–73. Jurisdiction in cases involving interactive websites must be determined by the degree of interactivity. *Jones*, 995 S.W.2d at 773. The evidence shows none of the Colorado doctors independently advertised their services on the internet. UCH and UCHSC maintain a website but contend it is passive and for informational purposes only. There is nothing in the evidence provided to indicate that any of the Colorado defendants transacted business or entered into contracts via the internet or the website. The evidence on which the Townsends rely merely shows that each of the doctors may be found on the internet and that UCH maintains an informative website. Having contact information and product information alone on the internet is not sufficient to grant jurisdiction in Texas. *Mink*, 190 F.3d at 336. There is no evidence any of the Colorado defendants conducted business over the internet. The evidence is factually sufficient to support the trial court's finding that none of the Colorado defendants were conducting business in Texas. The Townsends' second point of error is overruled.

We affirm the judgment.