# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 16, 2025

Lyle W. Cayce
Clerk

No. 24-50403

_____

Jose Gonzalez,

*Plaintiff—Appellant*,

*versus*

Walgreen Company,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:21-CV-1184

_____

Before Elrod, *Chief Judge*, and Clement, and Ramirez, *Circuit Judges*.

Edith Brown Clement, *Circuit Judge*:

In March 2020, Jose Gonzalez visited a Walgreens store in Austin, Texas. Prior to his arrival, an unidentified customer at the same store had used the men's restroom and clogged the toilet. The customer informed a Walgreens employee, who gave the customer a plunger to unclog the toilet. As the customer was plunging the toilet, Gonzalez used the restroom and, while on his way out, slipped on water that had accumulated on the floor. Gonzalez sued Walgreen Co. (Walgreens) for his injuries. After the close of Gonzalez's case-in-chief at trial, Walgreens moved for judgment as a matter

No. 24-50403

of law (JMOL), which the district court granted. Gonzalez now appeals. Because no reasonable jury could find that Walgreens had actual or constructive knowledge of the wet floor, we AFFIRM.

## I.

## A.

On March 20, 2020, an unidentified male customer visited the Walgreens store on W. William Cannon Drive in Austin, Texas. Video surveillance shows that he entered the hallway leading to the men's restroom at 12:17:56 pm, exited at 12:28:31 pm, and then approached the shift lead, Chris Perez. Speaking to Perez, the customer apparently relayed that he had clogged the toilet.[1] Perez and the customer then took a brief trip to the restroom, after which Perez went to speak with the store manager, Lisa Alexander. Perez informed Alexander that the customer had clogged the toilet. Perez asked Alexander if he could expense a plunger and give it to the customer, and Alexander approved. Perez proceeded to give the plunger to the customer, walk with him to the restroom hallway, and then walk out of the hallway about eighteen seconds later while the customer remained in the restroom.

Fewer than ten minutes later, Gonzalez entered the Walgreens store. Alexander testified that Gonzalez asked her if the store carried a University of Texas-themed mousepad. Alexander told him the store did not, and the two briefly chatted about the COVID-19 pandemic. Afterwards, Gonzalez asked about a public restroom, and Alexander gave him directions to the men's room.

---

[1] Neither the customer nor Perez testified at trial.

2

No. 24-50403

Surveillance video shows Gonzalez enter the restroom hallway at 12:40:01 pm, around ten minutes after the customer returned to the restroom with the plunger (at 12:29:34 pm). Gonzalez testified that when he entered the restroom, he did not see anyone, it was silent, and the stall door was closed. The only toilet in the restroom was located inside the stall. Gonzalez did not notice any water on the ground. Gonzalez went straight to use the urinal, then walked to the sink to wash his hands, and afterwards moved to exit the restroom. While exiting through the door, Gonzalez's left foot slipped, and his right ankle rolled to the right. Gonzalez described that he "pretzeled down, kind of Indian style," but was able to grab the hole where the door latched with his left thumb to prevent himself from falling to the ground. No one witnessed Gonzalez's slip.

After recovering from the slip, Gonzalez noticed that his left shoe, but not his right, was wet, and he tried to remove the water from his left shoe. Gonzalez exited the restroom hallway about a minute after he entered. He promptly notified Perez that he had slipped in the restroom. Gonzalez and Perez then entered the hallway together at 12:41:18 pm.

Gonzalez testified that he and Perez approached the restroom and looked inside (but did not go in), which is when Gonzalez first saw a thin layer of liquid that covered about half of the bathroom floor. Gonzalez estimated the amount of water to be two gallons. On direct examination, Gonzalez described the location of the water as covering the left side of the bathroom floor, from the perspective of someone looking into the bathroom from the entrance. Gonzalez also testified that he could see wet footprints in front of the urinal and sink. Gonzalez believed the water was seeping from the toilet, but he could not see the source directly, and his testimony was contradictory on whether the water was standing or moving when he saw it. Gonzalez exited the hallway at 12:41:43 pm, fewer than 30 seconds after he entered the hallway with Perez.

No. 24-50403

Perez then placed a warning cone at the entrance of the restroom hallway. Seconds later, the unidentified customer exited the restroom and left the store. Perez paged Alexander and told her that Gonzalez had slipped in the restroom. Perez remarked to Alexander that the bathroom "looked fine and that there was nothing on the ground." About twenty-five minutes after Gonzalez slipped, Perez returned to the men's restroom to place a warning cone inside the restroom. During a later conversation between Perez and Alexander, Perez stated that he did see water in the drain when he took a photo of the restroom, but Alexander testified that that did not necessarily mean there was water on the ground. Sometimes water stayed in the drain from mopping, she explained.

Gonzalez claims injuries to his spine, right leg, ankle, and foot from the slip.

**B.**

In November 2021, Gonzalez sued Walgreens in Texas state court. Walgreens removed the case to federal court based on diversity jurisdiction. Gonzalez asserted a theory of vicarious liability and a claim for premises liability against Walgreens.[2] Walgreens moved to dismiss the vicarious-liability theory, and the district court granted the motion. Walgreens also moved for summary judgment on all of Gonzalez's claims, but the district court denied this motion.

The parties proceeded to a half-day jury trial. After the close of Gonzalez's case-in-chief, Walgreens orally moved for JMOL under Federal Rule of Civil Procedure 50(a), on the grounds that (1) the wet floor was open and obvious and (2) Walgreens had no actual or constructive knowledge of

---

[2] Gonzalez also asserted the "derivative liability" of Walgreens but later abandoned those claims.

the wet floor. The district court granted the motion on the second ground, declining to reach the first. A few days after the trial, the parties submitted briefing on the oral JMOL motion, and Gonzalez moved for a new trial. The court entered written reasons for its order granting JMOL and denied the motion for a new trial.

Gonzalez timely appealed the JMOL and the dismissal of his vicarious-liability theory.

## II.

"This court reviews a district court's ruling on a motion for judgment as a matter of law de novo, applying the same standard as the district court." *N. Cypress Med. Ctr. Operating Co. v. Aetna Life Ins. Co.*, 898 F.3d 461, 473 (5th Cir. 2018). Federal Rule of Civil Procedure 50 entitles a movant to JMOL when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). "This occurs when the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary verdict." *Brennan's Inc. v. Dickie Brennan & Co.*, 376 F.3d 356, 362 (5th Cir. 2004).

To survive a Rule 50 motion, the nonmovant "must at least establish a conflict in substantial evidence on each essential element of their claim." *Goodner v. Hyundai Motor Co.*, 650 F.3d 1034, 1039 (5th Cir. 2011) (quoting *Anthony v. Chevron USA, Inc.*, 284 F.3d 578, 583 (5th Cir. 2002)). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *N. Cypress*, 898 F.3d at 473 (quoting *Conn. Gen. Life Ins. Co. v. Humble Surgical Hosp., L.L.C.*, 878 F.3d 478, 485 (5th Cir. 2017)).

"In considering a Rule 50 motion, the court must review all of the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party; the court may not make credibility determinations or weigh the evidence, as those are jury functions." *Brennan's*, 376 F.3d at 362. "[A]lthough the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). "That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Id.* (quotations omitted).

## III.

We begin with the JMOL of Gonzalez's premises-liability claim. To prevail on a premises-liability claim under Texas law, the plaintiff must prove four elements: (1) the property owner had actual or constructive knowledge of the injurious condition; (2) the condition posed an unreasonable risk of harm; (3) the property owner failed to take reasonable care to reduce or eliminate the risk; and (4) the property owner's failure to use reasonable care was the proximate cause of the plaintiff's injuries. *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 358 (5th Cir. 2017).

In granting JMOL to Walgreens, the district court focused on the first element: actual or constructive knowledge. A plaintiff satisfies this element by showing that (1) the defendant placed the substance on the floor, (2) the defendant actually knew that the substance was on the floor, or (3) it is more likely than not that the condition existed long enough to give the premises owner a reasonable opportunity to discover it, also known as "constructive knowledge." *Id.* (citing *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex. 2002)); *id.* at 359 ("In premises cases constructive knowledge can be

established by showing that the condition had existed long enough for the owner or occupier to have discovered it upon reasonable inspection." (quotations omitted)).

On appeal, Gonzalez makes three main arguments for why the district court was incorrect that a reasonable jury would not be able to find that Walgreens knew or should have known of the wet floor: (A) The customer's knowledge must be imputed to Walgreens under an agency theory; (B) Walgreens's knowledge of the clogged toilet is sufficient; and (C) the evidence creates a fact question as to constructive knowledge. We plunge into a discussion of each argument below.

## A.

Gonzalez first argues that "[t]he Customer became Walgreens's agent when management deputized him to repair the store's clogged toilet." And because "any knowledge an agent had of a dangerous condition must be imputed to the principal," *Union Pac. R.R. Co. v. Prado*, 685 S.W.3d 848, 862 (Tex. 2024) (quotations omitted), the court must charge Walgreens with the customer's knowledge of the wet floor. In response, Walgreens argues that the evidence at trial did not support an agency relationship and in any event, there was no evidence that the customer knew of the wet floor before Gonzalez slipped.

Under Texas law, "an 'agent' is one who is authorized by a person or entity to transact business or manage some affair for the person or entity." *Townsend v. Univ. Hosp.-Univ. of Colo.*, 83 S.W.3d 913, 921 (Tex. App.—Texarkana 2002, pet. denied). "An essential element of the principal-agent relationship is the alleged principal's right to control the actions of the alleged agent." *Id.* "This right includes not only the right to assign tasks, but also the right to dictate the means and details of the process by which an agent will accomplish the task." *Id.* "[A]gency will not be presumed, and the party

asserting the relationship has the burden of proving it." *Coleman v. Klockner & Co. AG*, 180 S.W.3d 577, 588 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

Gonzalez's only evidence of an agency relationship is that Perez gave the customer a plunger after Alexander granted Perez permission to do so, and that the customer apparently attempted to unclog the toilet with that plunger. While the customer arguably acted on Walgreens's behalf, "a party is not an agent simply because he acts on behalf of another." *Del Carmen Flores v. Summit Hotel Grp.*, 492 F. Supp. 2d 640, 644 (W.D. Tex. 2006). Thus, the customer plunging the toilet is not alone sufficient to create an agency relationship. And while Walgreens's permitting the customer to plunge the toilet on its behalf was no doubt imprudent, that does not answer the agency question. "Authorization to act and *control of the action* are the two essential elements of agency." *Reliant Energy Servs., Inc. v. Cotton Valley Compression, L.L.C.*, 336 S.W.3d 764, 783 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (emphasis added).

The heart of the agency test is the principal's right to control the actions of the agent, and Gonzalez offers no evidence on this point, even though he bears the burden of proving the agency relationship. *See Del Carmen*, 492 F. Supp. 2d at 644 (deeming right to control the "defining feature of agency relationship"); *Coleman*, 180 S.W.3d at 588 (noting that party asserting agency relationship bears the burden of proving it). We have neither Perez's nor the customer's account of events, but the surveillance footage shows that the customer sought out Perez after exiting the restroom. It could be that the customer volunteered to try and unclog the toilet, rather than Perez assigning him the task. There is no evidence that Perez demanded or required the customer to plunge the toilet. And Perez did not accompany the customer into the restroom to direct or supervise his actions.

No. 24-50403

What's more, Walgreens introduced evidence of a work order that was placed after the customer left and that documented a visit from a plumber who quickly unclogged the toilet. The fact that the toilet was still clogged when the customer left further indicates that Walgreens had no control over his actions; unlike an employee, the customer clearly felt no obligation to *solve* the problem, only *attempt* to do so. The customer was free to leave at any time, and he did leave before completing "the task" he was supposedly "assigned"—hardly an instance of control over the customer's actions. *See Walker v. Fed. Kemper Life Assurance Co.*, 828 S.W.2d 442, 452 (Tex. App.—San Antonio 1992, writ denied) ("[E]ven if a person acts for or accommodates another, if the accommodating person is not under that person's control, the relationship of agency does not exist.").

Additionally, there is no evidence that Walgreens "dictate[d] the means and details of the process" of unclogging the toilet to the customer. *Townsend*, 83 S.W.3d at 921. All we know is Perez gave the customer a plunger; we are unaware of any directions or details that accompanied the handoff. In sum, Gonzalez provided no evidence that Walgreens gained the right to control the customer's actions merely because he accepted a plunger from the store. With nothing backing up Gonzalez's argument besides the customer acting on behalf of Walgreens, we reject the agency theory and refuse to impute the customer's knowledge to Walgreens.

**B.**

Gonzalez's next argument in support of Walgreens's knowledge of the hazardous condition is that both Perez and Alexander knew about the clogged toilet and the customer's unsupervised presence in the restroom. And under *Corbin v. Safeway Stores, Inc.*, a storeowner's knowledge of the *source* of a hazardous condition can create a genuine dispute of fact as to the knowledge element, "even in the absence of evidence showing the

9

storeowner's actual or constructive knowledge of the presence on the floor of the specific object causing the fall." 648 S.W.2d 292, 295 (Tex. 1983). In other words, according to Gonzalez, knowledge of the clogged toilet is sufficient, even if Walgreens did not know and should not have known about the wet floor.

In *Corbin*, the plaintiff slipped on grapes that had fallen off a self-service display in a Safeway store. *Id.* at 294. The trial court granted Safeway's motion for directed verdict, the court of appeals affirmed, but the Supreme Court of Texas reversed. *Id.* at 294, 298. Safeway had no knowledge of the grape the plaintiff slipped on, and although Safeway "knew of [the] unusually high risk associated with its grape display," the store argued that "it [was] not obligated to protect customers from the acts of other customers in causing grapes to fall to the floor." *Id.* at 296. The Supreme Court of Texas disagreed, noting that Safeway knew grapes to fall on prior occasions, knew this created a slippery surface, and failed to place a mat in front of the display, despite its own policy requiring a mat. *Id.* at 296–98. This was enough to send the liability question to the jury, even if Safeway was unaware of the specific grape that caused the fall. *Id.* at 296. Gonzalez compares Safeway's knowledge of the risk posed by the grape display with Walgreens's awareness of the clogged toilet.

In the same vein as *Corbin*, Gonzalez cites *Hernandez v. Kroger Texas, L.P.*, No. 01-18-00562, 2019 WL 3949458 (Tex. App.—Houston [1st Dist.] Aug. 22, 2019, no pet.) (mem. op.). There, the plaintiff slipped on water in front of a water-tank refill station in a store. *Id.* at *1. Citing *Corbin*, the court explained that under some circumstances, "[i]nstead of needing evidence of knowledge of a specific item on the floor, a slip-and-fall plaintiff can, under appropriate facts, rely on the storeowner's knowledge that its display, itself, presented an unreasonable fall risk to patrons." *Id.* at *4.

The problem with Gonzalez's reliance on *Corbin* and *Hernandez*, as the district court identified, is that in both cases "there was clear evidence that the defendants *actually knew* the conditions *frequently* caused a condition that posed an unreasonable risk of harm." By contrast, Alexander testified that in her two years of experience, this was the first time anyone alleged that the toilet overflowed. Also, not every clogged toilet presents the risk of overflowing.

On appeal, Gonzalez counters that no prior incidents had occurred by the water dispenser in *Hernandez*, and so there should be no need for prior incidents at the Walgreens store. But "there was evidence that . . . water spills occurred in the traffic area daily, and that there were repeated instances of the mat proving inadequate to absorb the spilled water." *Id.* *8. Thus, even if there were no incidents, the *Hernandez* court emphasized the store's knowledge of prior instances of a dangerous condition created by the display, of which there is no evidence in this case. *Hernandez* is therefore distinguishable.

The Supreme Court of Texas recently clarified its view of *Corbin*. After noting that several recent decisions have declined to apply *Corbin*, the court explained, "To the extent *Corbin*'s approach could ever be employed after our more recent cases, it would only be in a situation where—as in *Corbin*—the defendant had a policy or practice that it knew routinely created an unreasonable risk of harm." *Albertsons, LLC v. Mohammadi*, 689 S.W.3d 313, 319 (Tex. 2024). This view aligns with the district court's interpretation of *Corbin* and *Hernandez*.

Because Gonzalez fails to identify a policy or practice of Walgreens that it knew routinely created an unreasonable risk of harm, the district court rightly washed its hands of *Corbin* and *Hernandez*. Walgreens's knowledge of the clogged toilet could not substitute for knowledge of the wet floor.

## C.

Gonzalez's third and final argument as to the knowledge element is that the evidence at trial raised at least a fact question as to whether Walgreens had constructive knowledge of the wet floor. "Constructive knowledge is a substitute in the law for actual knowledge." *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 102 (Tex. 2000). Constructive knowledge "requires proof that an owner had a reasonable opportunity to discover the defect," and "that question requires analyzing the combination of proximity, conspicuity, and longevity." *Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 567 (Tex. 2006) (per curiam). Nevertheless, "the rule in Texas is that temporal evidence, not proximity evidence, is the *sine qua non* of a premises owner's constructive knowledge." *Dixon v. Wal-Mart Stores, Inc.*, 330 F.3d 311, 315 (5th Cir. 2003).[3]

"Without some temporal evidence, there is no basis upon which the factfinder can reasonably assess the opportunity the premises owner had to discover the dangerous condition." *Reece*, 81 S.W.3d at 816. "[W]hen circumstantial evidence is relied upon to prove constructive notice, the evidence must establish that it is more likely than not that the dangerous condition existed long enough to give the proprietor a reasonable opportunity to discover the condition." *Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex. 1998). "[M]eager circumstantial evidence from which equally plausible but opposite inferences may be drawn is speculative and thus legally

_____

[3] "[A] particularly conspicuous hazard, or an employee's close proximity to an inconspicuous hazard for a 'continuous and significant period of time,' may reduce the amount of time within which a 'premises owner should have become aware of the dangerous condition.'" *Shirey v. Wal-Mart Stores Tex., L.L.C.*, 699 F. App'x 427, 428 (5th Cir. 2017) (per curiam) (quoting *Reece*, 81 S.W.3d at 816).

insufficient to support a finding." *Id.*; *Threlkeld v. Total Petrol., Inc.*, 211 F.3d 887, 894 (5th Cir. 2000).

As for the temporal evidence in this case, the customer first emerges from the restroom hallway at 12:28:31 pm, and Gonzalez enters the restroom hallway at 12:40:01 pm. Drawing the inference that the toilet was overflowing as soon as the customer sought out Perez, the temporal evidence in this case is about ten minutes.

Caselaw from within this circuit overflows with examples of courts finding that temporal evidence of ten minutes, without more, is insufficient to establish constructive knowledge. *See, e.g.*, *Shirey*, 699 F. App'x at 429 (holding that "the seventeen minutes during which the inconspicuous grape was on the floor did not afford Wal-Mart a reasonable time to discover and remove the hazard"); *Threlkeld*, 211 F.3d at 894 (noting that at worst, the restroom went unobserved for forty-five minutes, yet affirming JMOL for defendant); *Brookshire Food Stores, L.L.C. v. Allen*, 93 S.W.3d 897, 901 (Tex. App.—Texarkana 2002, no pet.) (holding that grapes on the floor for no longer than fifteen minutes did not give store constructive knowledge); *Robbins v. Sam's E., Inc.*, No. 21-20050, 2021 WL 3713543, at *2 (5th Cir. Aug. 20, 2021) (per curiam) ("[T]he ten minutes during which the inconspicuous fruit was on the floor did not afford the Crossmark employees a reasonable time to discover and remove the hazard."); *Agbonzee v. Wal-Mart Stores Tex., L.L.C. #772*, No. 21-20395, 2022 WL 3137428, at *3 (5th Cir. Aug. 5, 2022) (per curiam) (noting temporal evidence of twelve minutes "cuts against finding constructive knowledge"). Flush with this caselaw, we cannot find a genuine dispute based on Gonzalez's temporal evidence alone.

But Gonzalez argues that he has more than just temporal evidence of ten minutes; he also testified to witnessing roughly two gallons of water on the floor. In support of this eyewitness testimony creating an issue of fact as

to constructive knowledge, Gonzalez relies on two cases: *Moreno v. Wal-Mart Stores Tex., LLC*, 506 F. Supp. 3d 503 (S.D. Tex. 2020) and *Casey v. Walmart Stores Tex., LLC*, No. 4:21-CV-02735, 2023 WL 2652262 (S.D. Tex. Mar. 26, 2023). The district court distinguished *Moreno* on the grounds that "[t]here, store employees walked past the puddle nine times within thirty minutes prior to plaintiff's injury," meaning "it was not the puddle's size alone that satisfied the temporal requirement, but also the puddle's proximity to store employees." *Moreno*, 506 F. Supp. 3d at 508. Gonzalez has no evidence of proximity in this case, so *Moreno* is distinguishable.

*Casey* is a closer call. The plaintiff in *Casey* slipped on a puddle of water while walking down the meat aisle of a Wal-Mart store. 2023 WL 2652262, at *1. The district court found a genuine issue of material fact as to whether Wal-Mart had constructive knowledge of the water and denied summary judgment. *Id.* at *6. The court noted that the plaintiff "personally observed the liquid seeping from the cooler," and that a customer who came to the plaintiff's aid after her fall observed the ongoing leak too. *Id.* at *4. The parties also agreed that the puddle was significant. *Id.* In finding an issue of fact, the court focused on "the gradual nature yet substantial size of the leak," supported by Casey's firsthand observation of the leak itself. *Id.* The key was that Casey saw the liquid seeping from the meat cooler, indicating that the puddle had formed slowly over time and therefore had to be present for a while before the slip.

By contrast, Gonzalez did not actually see whether the water was leaking from under the toilet or overflowing from the bowl. Looking at whatever portion of the toilet was visible from outside the stall, Gonzalez only saw that "the side of the toilet was shiny and wet, and the back of it was dry and dull." Indeed, on appeal, Gonzalez equivocates between an "overflow" causing the puddle and a "leak" doing the same.

The distinction is relevant because a leak from between the toilet and floor would indicate a slow, ongoing seepage (as in *Casey*), as opposed to a quick puddle forming from water overflowing due to the customer's plunging or the toilet backing up from the clog. In the latter scenarios, it is unlikely the puddle would have been present the full ten minutes; it could have formed moments before Gonzalez entered. Thus, Gonzalez's eyewitness testimony of the puddle alone, without a source, is the kind of "meager circumstantial evidence from which equally plausible but opposite inferences may be drawn," meaning it cannot support a finding of constructive knowledge. *Gonzalez*, 968 S.W.2d at 936.

This case is closer to *Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934. There, the plaintiff slipped and fell on macaroni salad on the floor of a Wal-Mart aisle. *Id.* at 936. Wal-Mart argued there was no evidence the macaroni had been on the floor long enough to charge it with constructive notice, and the Supreme Court of Texas agreed. *Id.* at 936–38. The plaintiff testified that the macaroni contained dirt, footprints, and cart tracks, indicating it "had been there a while." *Id.* at 936. But the court determined that this testimony "can no more support the inference that it accumulated dirt over a long period of time than it can support the opposite inference that the macaroni had just been dropped on the floor and was quickly contaminated by customers and carts traversing the aisle." *Id.* at 937.

The same could be said about Gonzalez's testimony here. With no evidence of the puddle's source, it is just as likely that the customer plunged and splashed water on the ground the minute before Gonzalez entered the restroom than it is that the puddle began forming as soon as the toilet clogged (or before, as could be the case with a leak). Thus, the district court was correct to find the evidence insufficient as to constructive knowledge.

No. 24-50403

\*    \*    \*

In sum, the district court properly held that a reasonable jury would not have had enough evidence to find that Walgreens had actual or constructive knowledge of the wet floor. We therefore affirm the JMOL dismissing Gonzalez's premises-liability claim.

## IV.

Gonzalez also appeals the Rule 12(b)(6) dismissal of his theory of vicarious liability against Walgreens.

"We review a district court's grant of a motion to dismiss for failure to state a claim de novo, 'accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff.'" *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (quoting *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In dismissing Gonzalez's theory, the district court reasoned that vicarious liability requires Walgreens's employees or agents to have committed a negligent act in the course and scope of their employment that is separate from Walgreens's duty to keep its premises safe. "[B]ecause this is solely a premises liability action, and because the pleadings do not support an inference that any other individual could have committed an actionable tort," the district court flushed away Gonzalez's vicarious-liability theory.

Gonzalez argues on appeal that he alleged that Walgreens is vicariously liable for the customer's actions because the customer was Walgreens's employee, borrowed employee, or agent. He also claims Walgreens could be vicariously liable for Alexander and Perez. But "[o]nly

the owner or occupier, not its employees, owe a duty to keep the premises safe for invitees." *Moya v. Sam's E., Inc.*, No. 7:19-cv-00390, 2021 WL 4084517, at *4 (S.D. Tex. Mar. 17, 2021) (citing *TXI Operations, L.P. v. Perry*, 278 S.W.3d 763, 764 (Tex. 2009)). Gonzalez did not allege a breach of any duty other than the duty to keep the premises safe. And to the extent Gonzalez alleges that the customer, Perez, or Alexander failed to keep the premises safe, such allegations constitute his premises-liability claim, not a basis for holding Walgreens vicariously liable. *See Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 776 (Tex. 2010) ("[N]egligent activity encompasses a malfeasance theory based on affirmative, contemporaneous conduct by the owner that caused the injury, while premises liability encompasses a nonfeasance theory based on the owner's failure to take measures to make the property safe." (footnote omitted)).

The Supreme Court of Texas "has consistently treated slip/trip-and-fall cases as presenting claims for premises defects." *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 386 (Tex. 2016). This is obviously one such case. The district court was right to dismiss Gonzalez's theory of vicarious liability.

## V.

For these reasons, we AFFIRM the JMOL and the dismissal of Gonzalez's vicarious-liability theory.