Affirmed and Opinion filed August 18, 2005









Affirmed and Opinion filed August
18, 2005.

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-04-00118-CV

_______________

 

MARSHALL COLEMAN, ET AL., Appellants

 

V.

 

KLÖCKNER & CO. AG and
KLÖCKNER INDUSTRIE-ANLAGEN GmbH, Appellees

 

_______________________________________________________________________

 

On Appeal from the 23rd District Court

Brazoria County, Texas

Trial Court Cause No. 94C1392

_______________________________________________________________________

 

O P I N I O N

Appellants bring this interlocutory appeal from an order
granting the special appearances of Klöckner & Co. AG (AKlöckner & Co.@) and Klöckner Industrie-Anlagen GmbH
INA (AKlöckner INA@). 
We affirm the trial court=s judgment.








I. 
Background

Appellants are veterans of the 1991 Persian Gulf War and some
of their family members.  In 1994,
appellants filed suit against approximately eighty defendants alleging that the
defendants sold to Iraq the material, equipment, and technology used to create
biological and chemical weapons used in the war.  The case was removed to federal court, which
dismissed for lack of subject matter jurisdiction.  Coleman v. Alcolac, 888 F. Supp. 1388,
1404 (S.D. Tex. 1995) (order granting motion to dismiss for lack of
subject-matter jurisdiction and remanding cause to state court).  

Subsequent to remand, Klöckner & Co. and Klöckner INA
(collectively, the AKlöckner defendants@), were added as defendants.  The Klöckner defendants filed special
appearances pursuant to Texas Rule of Civil Procedure 120a, challenging
personal jurisdiction.  On October 7,
2003, the trial court granted both special appearances, and appellants filed
this interlocutory appeal from the trial court=s order.  See
Tex. Civ. Prac. & Rem. Code Ann. ' 51.014(a)(7)
(Vernon Supp. 2004B05).  

II. 
Standard of Review  

The plaintiff bears the initial burden of pleading sufficient
allegations to bring a non-resident defendant within the personal jurisdiction
of a Texas court.  BMC Software
Belgium, N.V. v. Marchand, 83 S.W.3d 789, 793 (Tex. 2002); McKanna v.
Edgar, 388 S.W.2d 927, 930 (Tex. 1965). 
A defendant who challenges the trial court=s exercise of personal jurisdiction
through a special appearance bears the burden of negating all bases of personal
jurisdiction.  Marchand, 83 S.W.3d
at 793; Kawasaki Steel Corp. v. Middleton, 699 S.W.2d 199, 203 (Tex.
1985). 








Whether a trial court has personal jurisdiction over a
defendant is question of law, which we review de novo. Am. Type
Culture Collection, Inc. v. Coleman, 83 S.W.3d 801, 805B06 (Tex. 2002); Marchand, 83
S.W.3d at 794. However, the trial court frequently must resolve questions of
fact before deciding the question of jurisdiction.  Marchand, 83 S.W.3d at 794.  When, as here, the trial court does not issue
findings of facts and conclusions of law with its special appearance ruling,
all fact findings necessary to support the judgment and supported by the
evidence are implied.  Id. at 795;
Worford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990).  When the appellate record includes both the
reporter=s and clerk=s records, however, these implied
findings are not conclusive and may be challenged for legal and factual
sufficiency.  Marchand, 83 S.W.3d
at 795. 

III. 
The Law of Personal Jurisdiction

A Texas Court may exercise personal jurisdiction over a
non-resident defendant only if (1) the Texas long-arm statute authorizes the
exercise of personal jurisdiction, and (2) the exercise of personal
jurisdiction comports with the state and federal constitutional guarantees of
due process.  See id.  The Texas long-arm statute permits Texas
courts to exercise jurisdiction over a non-resident that Adoes business@ in Texas.  Tex.
Civ. Prac. & Rem. Code Ann. ' 17.042 (Vernon 1997).  The broad language of the Adoing business@ requirement in section 17.042
permits the statute to reach Aas far as the federal constitutional requirements of due
process will allow.@  Guardian Royal
Exch. Assur., Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 226
(Tex. 1991).  Thus, the requirements of
the long-arm statute are satisfied if the exercise of personal jurisdiction
comports with federal due process requirements. 
See id.     








The due process clause of the federal constitution permits a
court to exercise jurisdiction over a nonresident defendant if (1) the
defendant has purposely established Aminimum contacts@ with the forum state, and (2) the
exercise of personal jurisdiction does not offend traditional notions of fair
play and substantial justice.  Coleman,
83 S.W.3d at 806; Int=l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  Minimum contacts must be based on Asome act by which the defendant
purposefully avails itself of the privilege of conducting activities within the
forum State, thus invoking the benefits and protections of its laws.@ 
Burger King v. Rudzewicz, 471 U.S. 462, 475 (1985). The
purposeful availment requirement ensures that a non-resident will not be haled
into a Texas court based solely upon random, fortuitous, or attenuated contacts
or the unilateral activity of another party or third person.  Guardian Royal, 815 S.W.2d at
226.  The defendant=s activities, whether they are direct
acts within Texas or conduct outside Texas, must justify a conclusion that the
defendant could reasonably anticipate being called into a Texas court.  Coleman, 83 S.W.3d at 806.  In conducting a minimum contacts analysis, it
is the quality of the defendant=s contacts, rather than their minimum number, that is
important.  Id.    

While the jurisdiction of Texas courts always depends on the
existence of some minimum contacts, the requisite extent of those contacts
varies depending upon whether the litigants are asserting specific or general
jurisdiction.  Guardian Royal, 815
S.W.2d at 227; Helicopteros Nacionales de Colombia, S.A. v. Hall, 466
U.S. 408, 414 (1984).  Specific
jurisdiction is established when (1) a defendant=s contacts with the forum are
purposeful, and (2) the cause of action arises from or relates to a defendant=s contacts.  Guardian Royal, 815 S.W.2d at 227B28. 
In contrast, general jurisdiction is established when a defendant=s contacts in the forum are
continuous and systematic, allowing the forum to exercise jurisdiction over the
defendant even if the cause of action did not arise from or relate to
activities conducted within the forum state. 
Id. at 228.  General
jurisdiction requires a showing that the non-resident defendant conducted
substantial activities within the forum state, a more demanding minimum
contacts analysis than for specific jurisdiction.  Id. 
To satisfy due process under either general or specific jurisdiction,
the exercise of jurisdiction must not be unreasonable; that is, the exercise of
jurisdiction must comport with traditional notions of fair play and substantial
justice.  See id. at 228B33.  


In this case, the parties agree that only general
jurisdiction is applicable.  Therefore,
we limit our analysis to determining whether the Klöckner defendants= contacts with Texas give rise to
general jurisdiction.    








IV. 
Evidence Relevant to Minimum Contacts

A.        Klöckner &
Co.

Klöckner & Co. is a German holding company that is
headquartered in Duisburg, Germany.  Klöckner
& Co. does not manufacture any products; rather it sells and markets
throughout the world products made by various affiliated companies.  There is no evidence to show, and appellants
do not contend, that Klöckner & Co. has had any contacts with Texas.

B.        Klöckner INA

Klöckner INA, at the time pertinent to this case, was a
wholly-owned subsidiary of Klöckner & Co.[1]  Klöckner
INA is an international engineering and contracting firm that focuses on a
broad range of projects in the following industries: power plants and
distribution systems; ports; water treatment plants; pipeline and irrigation
systems; material handling and transportation systems; glass and ceramics;
textiles; wood processing; hotels; and steel production and processing.  The only contact that Klöckner INA had with
Texas was a single visit to Texas by Klöckner INA=s former CEO, Gunther Hering, in
which he met with representatives from the Texas engineering firm Haliburton
Co. to discuss potential business developments. 

C.        Subsidiary
Corporations

In support of their jurisdictional argument, appellants
contend that the Texas contacts of two subsidiary corporations, Klöckner
Industrial Installations, Inc. (AKlöckner Industrial@) and Union Air Transport (AUAT@), should be imputed to the Klöckner
defendants.  








1.         Union Air
Transport

UAT, at the time pertinent to this case, was a wholly-owned
subsidiary of Klöckner & Co.  UAT is
a New York Corporation with its principal place of business in Texas.  UAT is a named defendant in this case, but
did not contest personal jurisdiction in the trial court and is not a party to
the present appeal.

2.         Klöckner
Industrial

In 1975, Klöckner INA founded Klöckner Industrial, a Delaware
corporation with its principal office in New York.  Klöckner Industrial is a wholly-owned
subsidiary of Klöckner INA.  Klöckner
Industrial consists of only three employees: a president, a project manager,
and a secretary.  Klöckner Industrial=s president, Klaus Brosig (ABrosig@), testified that one of the purposes
for which Klöckner INA established Klöckner Industrial was to secure Exim Bank
financing for international construction projects to be built by Klöckner
INA.  However, since its inception,
Klöckner Industrial has expanded its business activities beyond those which it
was set up to perform.  Brosig testified
that Klöckner Industrial is not limited to working on Klöckner INA
projects.  Rather, Klöckner Industrial
has begun to serve as an Aexporter of record,@ whereby it assists other companies
in purchasing and exporting U.S. manufactured goods.   








Appellants point to various contacts that Klöckner Industrial
had with Texas engineering firms between 1986 and 1994, including Hudson
Engineering and Project Management Corp., Haliburton Co., Brown & Root,
Merex Corp., Xytel-Bechtel, Gulf Interstate Engineering, Howe-Baker Engineers
and Bechtel (collectively, Athe Texas engineering firms@). 
However, the only relevant contacts with the Texas engineering firms are
those that occurred prior to the time of appellants= injuries.  See MedCost, L.L.C. v. Loiseau, 166
S.W.3d 421, 434 (Tex. App.CAustin 2005, no pet. h.) (AThe relevant contacts are those up to
the time of injury.@); Botter v. Am. Dental Ass=n, 124 S.W.3d 856, 865 (Tex. App.CAustin  2003, no pet.) (ATexas authority implies that the
relevant contacts are those up to the time of the injury.@); AmQuip Corp. v. Cloud, 73
S.W.3d 380, 388 (Tex. App.CHouston [1st Dist.] 2002, no pet.) (holding that telephone
calls made after accident were irrelevant to jurisdiction); Scott v. Huey L.
Cheramie, Inc., 833 S.W.2d 240, 242 (Tex. App.CHouston [14th Dist.] 1992, no writ)
(holding that contract signed after injury occurred was irrelevant to
jurisdiction).  The latest time period
that appellants= injuries could have occurred was the summer of 1991 because
this was the time that the last American troops returned home from the Persian
Gulf War. Therefore, the only contacts by Klöckner Industrial with the Texas
engineering firms that are potentially relevant to our jurisdictional analysis
are the ones which occurred prior to the summer of 1991 (the Arelevant time period@).

During the relevant time period, Klöckner Industrial=s president, Klaus Brosig, attended
several meetings in Houston, Texas, in an effort to identify technical partners
to work with Klöckner Industrial on international projects. Klöckner Industrial
also entered into four contracts with Texas-based engineering firms and, at
various times, corresponded with them. 
These contacts are further described below.

(a)       Hudson Engineering
and Project Management Corp.

On October 19, 1990, Klöckner Industrial entered into a Apre-proposal@ agreement with Hudson Engineering
whereby the parties agreed to work together exclusively in submitting a bidding
proposal for a gas treatment plant project in Bolivia.  The agreement contemplated that if the
parties were awarded the contract on the project, Klöckner Industrial would
serve as prime contractor (exporter of record), and Hudson Engineering, as
subcontractor, would Aassume responsibility for performing design engineering,
procurement of materials and fabricated equipment sourced in the U.S.[,] and
supervision of field installation and start-up services.@ 
The agreement provided that it was to be governed by the laws of the
State of New York.  








(b)       Haliburton Co.

On April 4, 1991, Brosig, along with Klöckner INA=s former CEO, Gunther Hering,
traveled to Texas to attend a meeting with representatives from Haliburton Co.,
Brown & Root, Inc. and Brown & Root Braun.  A meeting report indicates that the
activities and capabilities of each company were discussed.  However, the record does not indicate whether
any specific business opportunities were discussed at either of these
meetings.   

On February 14, 1991, Brosig attended a meeting in Houston,
Texas, at which representatives from Haliburton Co. and Brown & Root, Inc.
were present.  A meeting report indicates
that Haliburton Co. was investigating the possibility of engaging in certain
countertrade transactions, and that the parties discussed whether Klöckner
Industrial could assist in structuring such transactions.  The record also contains a letter dated June
12, 1991 that Brosig sent to Dave Stegemeyer, International Credit Manager, Oil
Field Services Group, discussing potential countertrade activities.[2]

(c)       Brown &
Root, Inc.








On August 24, 1988, Brosig attended a meeting in Houston,
Texas, with representatives from Brown & Root, Inc.  On June 19, 1991, Klöckner Industrial entered
into a Apre-proposal@ agreement with Brown & Root
whereby the parties agreed to work together exclusively in submitting a bidding
proposal for a gas treatment plant project in Bolivia.[3]  The agreement contemplated that if the
parties were awarded the contract on the project, Klöckner Industrial would
serve as prime contractor (exporter of record), and Brown & Root, as
subcontractor, would Aassume responsibility for all technical aspects of the
Project[,] supplying to Klöckner the necessary design engineering, materials
and fabricated equipment sourced in the U.S. and supervision of field
installation and start-up services.@ 
The agreement provided that it was to be governed by the laws of the
State of New York. 

The record also contains a letter, dated April 26, 1988, sent
by Wayne T. Mitchell, Manager of Business Development, Mineral & Metal
Industries of Brown & Root, Inc., to Brosig declining an invitation to a
Klöckner INA exhibit in Germany.  In
the letter, Mitchell identified other Brown & Root executives who he thought
might be interested in attending the exhibit.

(d)       Merex
Corporation

On February 12, 1991 and April 3, 1991, Brosig met with
representatives from Merex Corporation in Houston, Texas.  As a result of these meetings, the parties
entered into a contract whereby they agreed to cooperate in providing equipment
and materials for an international construction project.  Under the contract, Klöckner Industrial was
to assume the role of Aexporter of record.@

V. 
Single Business Enterprise Theory

In their first issue, appellants contend that Klöckner &
Co., Klöckner INA, Klöckner Industrial, and UAT (collectively Athe German entities@) operate as a single business
enterprise under Texas law.  Therefore,
appellants contend that the Texas contacts of UAT and Klöckner Industrial
should be imputed to the Klöckner defendants for personal jurisdiction purposes.
 








The Asingle business enterprise@ theory is an equitable doctrine used
to disregard the separate existence of corporations when the corporations are
not operated as separate entities, but rather integrate their resources to
achieve a common business purpose.  Old
Republic Ins. Co. v. Ex-Im Servs. Corp., 920 S.W.2d 393, 395B96 (Tex. App.CHouston [1st Dist.] 1996, no
writ).  Factors to be considered in
determining whether corporations operate as a single business enterprise
include, but are not limited to, the following: (1) common employees; (2)
common offices; (3) centralized accounting; (4) payment of wages by one
corporation to another corporation=s employees; (5) common business
name; (6) services rendered by the employees of one corporation on behalf of
another corporation; (7) undocumented transfers of funds between corporations;
and (8) unclear allocation of profits and losses between corporations.  Paramount Petroleum Corp. v. Taylor Rental
Ctr., 712 S.W.2d 534, 536 (Tex. App.CHouston [14th Dist.] 1986, writ ref=d n.r.e.). 

Appellants did not plead the Asingle business enterprise@ theory as a basis for imputing the
contacts of Klöckner Industrial and UAT to the German defendants. Instead,
appellants alleged that the German defendants should be subject to liability
based on theories of agency and alter ego, and the German concept of Konzern.  Furthermore, appellants did not present the Asingle business enterprise@ theory at the special appearance
hearing.  Accordingly, the Klöckner
defendants argue that appellants have waived their contention that the German
entities operate as a single business enterprise.    








Appellants respond that the Asingle business enterprise@ theory has just recently begun to
emerge in Texas appellate courts, and that a litigant cannot waive a previously
undeveloped legal doctrine.  Appellants
also point out that in Southern Union Co. v. City of Edinburgh, the
Texas Supreme Court recently declined to decide whether Aa theory of >single business enterprise= is a necessary addition to Texas law@ for purposes of disregarding
corporate structure.  129 S.W.3d 74, 87
(Tex. 2003).  Nevertheless, before
appellants filed the operative pleadings in this case, several Texas appellate
courts previously recognized the Asingle business enterprise@ theory as a method by which to
disregard the corporate structure of related entities.  See, e.g., Hall v. Timmons, 987 S.W.2d
248, 252 (Tex. App.CBeaumont 1999, no pet.); Beneficial Personnel Servs. of
Tex., Inc. v. Rey, 927 S.W.2d 157, 165 (Tex. App.CEl Paso 1996), vacated by
agreement, 938 S.W.2d 717 (Tex. 1997); Old Republic Ins. Co., 920
S.W.2d at 395B96; Paramount Petroleum Corp.,
712 S.W.2d at 536.  Accordingly, we
conclude that appellants had notice of the Asingle business enterprise@ theory, and thus had the opportunity
to assert this theory in order to persuade the trial court to disregard the
corporate structure of the German entities.

Appellants
further maintain that they should not be deemed to have waived the Asingle business enterprise@ theory because Athe fairness and
avoidance-of-surprise considerations that ordinarily undergird issues of waiver
are lacking due to the fact that [appellants] have long and consistently
claimed that the two Klöckner defendants (both German companies) are subject to
Texas jurisdiction based, in large part, on the U.S. activities of their
subsidiaries.@ We find this argument
unpersuasive.  While avoidance of
surprise to the opposing party is one of the justifications for requiring a
party to plead a theory relied upon, an equally important justification is to
prevent an appellate court from reversing an otherwise error-free judgment
based on an argument that was not raised in the trial court.  It is an established rule of Texas Procedure
that, absent fundamental error, an appellate court has no discretion to reverse
an otherwise error-free judgment based on a new argument raised for the first
time on appeal.  Larsen v.
FDIC/Manager Fund, 835 S.W.2d 66, 74 (Tex. 1992). 

Here,
the Asingle business enterprise@ theory was not presented to the
trial court.  Moreover, there is nothing
in the record to suggest that the trial court either explicitly or implicitly
considered the relevant factors of the Asingle business enterprise@ theory as part of its jurisdictional
analysis.  Therefore, we have no
discretion to reverse the trial court=s decision based upon this theory of
law.  Absent the requisite Afundamental error,@ we hold that appellants have waived
this claim by not presenting it at the trial court level.  Accordingly, we overrule appellants= first issue. 








VI.  Agency Theory

In their second issue, appellants contend that Klöckner
Industrial=s contacts with Texas should be
imputed to Klöckner INA for jurisdictional purposes because Klöckner Industrial
served as an agent of Klöckner INA.  

A.        Standard of
Review

The question of whether an agency relationship exists is
generally a question of fact.  Lyons
v. Lindsey Morden Claims Management, Inc., 985 S.W.2d 86, 90 (Tex. App.CEl Paso 1998, no pet.); Jorgensen
v. Stuart Place Water Supply Corp., 676 S.W.2d 191, 194 (Tex. App.CCorpus Christi 1984, no writ).  Here, the trial court did not expressly
find the absence of an agency relationship between Klöckner INA and Klöckner
Industrial.  Nevertheless, all the facts
necessary to support the trial court=s judgment and supported by the
evidence are implied. Marchand, 83 S.W.3d at 795.  Accordingly, we construe appellants= argument that an agency relationship
exists between Klöckner INA and Klöckner Industrial as a challenge to the legal
and factual sufficiency of the evidence to support the trial court=s implied finding that no such agency
relationship exists.  See SITQ E.U.,
Inc. v. Reata Rests., Inc., 111 S.W.3d 638, 652 (Tex. App.CFort Worth 2003, pet. denied) (noting
that agency is generally a question of fact and holding that the evidence was
legally and factually sufficient to support trial court=s implied finding that an agency
relationship existed); Townsend v. Univ. Hosp., 83 S.W.3d 913, 921 (Tex.
App.CTexarkana 2002, pet. denied) (holding
that evidence was factually sufficient to support trial court=s implied finding that there was no
agency relationship between the parties).








In reviewing the legal sufficiency of evidence, we consider
all the evidence in the light most favorable to the prevailing party, indulging
every reasonable inference in that party=s favor.  Associated Indem. Corp. v. CAT
Contracting, Inc., 964 S.W.2d 276, 285B86 (Tex. 1998); see City of Keller
v. Wilson, 48 Tex. Sup. Ct. J. 848, 849 (Tex. June 10, 2005).  A legal sufficiency challenge fails if there
is more than a scintilla of evidence to support the finding.  Lee Lewis Constr., Inc. v. Harrison,
70 S.W.3d 778, 782 (Tex. 2001); Marchand, 83 S.W.3d at 795.  More than a scintilla of evidence exists if
the evidence of a vital fact furnishes some reasonable basis for differing
conclusions by reasonable minds.  Lee
Lewis Constr., Inc., 83 S.W.3d at 782B83. 
In reviewing a factual sufficiency challenge, we set aside the trial
court=s decision only if its ruling is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust.  Pool v. Ford Motor Co.,
715 S.W.2d 629, 635 (Tex. 1986), overruled on other grounds, Crown
Life Ins. Co. v. Casteel, 22 S.W.3d 378, 388 (Tex. 2000).

B.        Review of
Agency Principles

Because the parties dispute whether Klöckner Industrial is an
agent of Klöckner INACan issue which affects our minimum contacts analysisCwe turn to the applicable agency
principles to resolve the issue.  An
agent=s contacts can be imputed to the
principal for purposes of the jurisdictional inquiry.  Walker Ins. Servs. v. Bottle Rock Power
Corp., 108 S.W.3d 538, 549 n.4 (Tex. App.CHouston [14th Dist.] 2003, no
pet.).  However, agency will not be
presumed, and the party asserting the relationship has the burden of proving
it.  Schultz v. Rural/Metro Corp.,
956 S.W.2d 757, 760 (Tex. App.CHouston [14th Dist.] 1997, no writ).  An agency relationship may be found from the
underlying facts or direct and circumstantial evidence showing the relationship
of the parties.  Id. 








An agent is one who is authorized by a person or entity to
transact business or manage some affair for the person or entity.  Townsend, 83 S.W.3d at 921.  The critical element of an agency
relationship is the right to control, and the principal must have control of
both the means and details of the process by which the agent is to accomplish
his task in order for an agency relationship to exist.  Id. 
Absent proof of the right to control the means and details of the work
performed, only an independent contractor relationship is established.  Happy Indus. Corp. v. Am. Specialties,
Inc., 983 S.W.2d 844, 852 (Tex. App.CCorpus Christi 1998, pet. dism=d w.o.j.).  The distinction between an independent
contractor and an agent is important to the jurisdictional inquiry because the
actions of an independent contractor by themselves are not sufficient to
subject a non-resident corporation to the jurisdiction of the forum state.  O=Quinn v. World Indus. Constructors,
Inc., 874 F. Supp.
143, 145 (E.D. Tex.), aff=d, 68 F.3d 471 (5th Cir. 1995).

C.        Application of
Agency Principles to Klöckner INA and Klöckner Industrial

Appellants contend that Klöckner Industrial is an agent of
Klöckner INA, and therefore, all of Klöckner Industrial=s contacts with the Texas engineering
firms should be imputed to Klöckner INA for jurisdictional purposes.  In support of their argument, appellants
contend (1) Brosig acted as agent of Klöckner INA when he visited and
corresponded with the Texas engineering firms because he solicited the firms to
participate in foreign projects with Klöckner INA, (2) the fact that Klöckner
Industrial consisted of only three employees demonstrates that it was merely an
agent of Klöckner INA, (3) Brosig made representations to the Texas engineering
firms that prove an agency relationship between Klöckner Industrial and
Klöckner INA, and (4) Klöckner Industrial is an Aindispensable@ agent of Klöckner INA because,
without Klöckner Industrial, Klöckner INA could not (a) legally export U.S.-manufactured
machinery and equipment abroad, or (b) obtain financing from the U.S.
government-backed Exim Bank to ship U.S. manufactured goods overseas for use on
Klöckner INA projects.     

1.         Solicitation
of Business for Klöckner INA








Appellants contend that Brosig acted as an agent of Klöckner
INA when he visited and corresponded with the Texas engineering firms because
he solicited the firms to participate in foreign projects in which Klöckner INA
was involved in the construction.  In his
deposition, Brosig testified that Klöckner Industrial would sometimes serve as Aexporter of record@ for U.S.-manufactured goods for
projects on which Klöckner INA was involved in construction of the project, but
that, on other occasions, Klöckner INA was not involved in the project.  The record also reflects that Klöckner
Industrial entered into contracts with Klöckner INA whereby Klöckner Industrial
agreed to identify Aqualified U.S. firms, which can assume the role of technical
partners in [Klöckner INA=s] international projects.@ 
This constitutes some evidence from which it can be inferred that Brosig
visited the Texas engineering firms, in part, to promote the business of
Klöckner INA.

However, the Klöckner defendants argue there is insufficient
evidence that Klöckner Industrial was acting as the agent of Klöckner INA when
it contacted the Texas engineering firms because appellants failed to prove the
critical element of Acontrol.@  The Klöckner
defendants cite Williamson v. Petrosakh Joint Stock Co., 952 F. Supp.
495 (S.D. Tex. 1997) and Dickson Marine, Inc. v. Panalpina, Inc., 179
F.3d 331 (5th Cir. 1999) to support their position that the evidence fails to
establish the Acontrol@ element that is requisite to an
agency relationship. 

In Williamson, the plaintiffs filed a wrongful death
lawsuit against Petrosakh, a Russian corporation.  952 F. Supp. at 496.  Petrosakh was owned 95% by Nimir Petroleum
Petrosakh Limited (ANimir Cyprus@), a Cyprus company.  Id.  Nimir Cyprus= sister company, Nimir Petroleum
Company U.S.A., Inc. (ANimir USA@), which was based in Texas, had a technical services
contract with Petrosakh under which Nimir USA would recruit and hire
independent contractor consultants to work at the Petrosakh refinery in
Russia.  Id.








Pursuant to the contract, Nimir USA located and hired
Williamson, a Texas resident, to work at the Petrosakh refinery in Russia.  Id. 
After Williamson died in an incident at the refinery, the plaintiffs
filed the wrongful death suit against Petrosakh in a Texas court.  Id. 
The plaintiffs asserted that jurisdiction over Petrosakh was proper
based on the Texas contacts of Nimir USA. 
Id.  The plaintiffs argued
that Nimir USA was Petrosakh=s agent because Nimir USA had recruited and hired Williamson
on behalf of Petrosakh.  Id. at
498.  The court, however, held there was
insufficient evidence to establish an agency relationship, despite the close
corporate relationship between the entities. 
Id.  The court concluded
there was no evidence to show that Petrosakh had the right to control the
details of Nimir USA=s work, even though Nimir USA acted on behalf of Petrosakh in
fulfillment of the technical services contract.  Id. 
Therefore, the court found there was only an independent contractor
relationship between the entities and declined to impute the Texas contacts of
Nimir USA to Petrosakh.  Id.

The same issue of control was also present in Dickson
Marine, which involved the Louisiana long-arm statute.  Similar to Texas, the Louisiana long-arm
statute extends to the limits of due process. 
See 179 F.3d at 336.  In Dickson
Marine, a vessel owned and operated by Dickson Marine, Inc. (ADickson@) needed repair work while operating
off the coast of West Africa.  Id.
at 335.  Dickson contacted Air Sea
Broker, Ltd. (AAir Sea@), a Swiss corporation, to arrange
for the repairs.  Id.  Air Sea referred Dickson to Panalpina
Transports Mondiaux Gabon S.A. (APanalpina Gabon@), a sister company, to handle the
repairs.[4]  Id. 
During the repair work, the vessel capsized.  Id. 
Dickson filed suit against Panalpina Gabon and Air Sea in a Louisiana
court to recover for property damage to the vessel.  Id. 
Dickson asserted that jurisdiction over Panalpina Gabon was proper based
on the Louisiana contacts of Air Sea because Air Sea acted as Panalpina Gabon=s agent.  Id. at 338.  

The court, however, found that there was insufficient
evidence to show that Panalpina Gabon asserted sufficient control over Air Sea
to establish an agency relationship.  Id.
The court noted it was undisputed that Air Sea had frequently benefitted
Panalpina Gabon by assisting maritime companies in contracting with Panalpina
Gabon for services to be performed in Gabon. 
Id.  While the evidence
showed that Air Sea was a Amiddleman@ who assisted vessel owners in contracting with the Panalpina
Worldwide Subsidiaries for maritime services, the court held that those facts
alone were not sufficient to establish the control required to prove an agency
relationship.  Id. at 338. 








Similarly, in this case, we find there is insufficient
evidence in the record to show that Klöckner INA controlled Klöckner
Industrial, or its president, Klaus Brosig. 
We find no evidence that Klöckner INA directed Brosig to travel to Texas
to meet with the Texas engineering firms, nor do we find any evidence that
Klöckner INA controlled the means and details of Brosig=s work.  Moreover, we find no evidence that Klöckner
Industrial had actual authority to negotiate or enter into contracts on behalf
of Klöckner INA.  Cf. Orozco v. Sander,
824 S.W.2d 555, 556 (Tex. 1992) (holding that under the facts and circumstances
of the case, it could be implied that the alleged agent entered into the
contract at the direction of and on behalf of the principal).

Although Brosig may have contacted the Texas engineering
firms for the mutual benefit of both Klöckner Industrial and Klöckner INA, we
find that such evidence alone is insufficient to establish an agency
relationship.  The missing element is
Klöckner INA=s right to control the means and
details of Klöckner Industrial=s work.  See
Gutierrez v. Cayman Islands Firm of Deloitte & Touche, 100 S.W.3d 261,
271 (Tex. App.CSan Antonio 2002, pet. dism=d) (finding that evidence failed to
establish an agency relationship between related accounting firms, even though
one accounting firm performed auditing work for the other, because there was no
evidence that one had the right to control the other=s work).

2.         Limited Size
of Klöckner Industrial 

Although appellants cite no direct evidence of control, they
contend that the fact that Klöckner Industrial consisted of only three
employees demonstrates that it was merely an agent of Klöckner INA.  Appellants contend that Klöckner Industrial
lacked any in-house engineering capabilities and assert that such a small
company could not physically implement the construction projects in which it
solicited the Texas engineering firms to participate.  Therefore, appellants assert that any actual
construction contracts Klöckner Industrial obtained were performed by and
through Klöckner INA.








However, Brosig testified that Klöckner Industrial=s work is not restricted to projects
in which Klöckner INA was involved in the project.  Brosig further testified that Klöckner Industrial
does not need financial support from Klöckner INA in order to serve as Aexporter of record@ or to export U.S. equipment and
material.  The record further indicates
that Klöckner Industrial was able to independently generate revenues, operate
with sufficient capital, pay its own salaries and expenses, and maintain
separate property.  Under these
circumstances, we will not presume that an agency relationship existed merely
because of Klöckner Industrial=s limited resources and personnel.  

3.         Representations
Made by Brosig

Appellants also rely on Brosig=s testimony concerning
representations he made to the Texas engineering firms.  In his deposition, Brosig testified as
follows:

Q:        Now, I take it when you would go [to] the various businesses,
like Brown & Root or Haliburton or Hudson Engineering, and solicit their
business to represent them in order to be the prime contractor for major
projects overseas that you wouldn=t come
in and represent that you were asking them to contract with [Klöckner
Industrial] that had total assets of $1.7 million for one hundred million
dollar projects overseas, were you?

A:        [Witness nodded head].

Q:        You were representing that you were coming in as the
representative of Klöckner INA Germany, weren=t you?

A:        Yes.

Q:        And I would think that if I, Joe Blow, with an office in
Garden City, New York and one secretary walked into M.W. Kellog and said, I
want you to use me as prime contractor on a one hundred million dollar project,
they would laugh me out of the door.  But
now when you walk in, they see you, and what you tell them is that, I=m a representative of Klöckner INA Germany, don=t you?

A:        No.  I represented I=m a member of Klöckner INA in New York.

                                                                            .
. .

Q:        Isn=t true that you represented to those customers that
you were there to speak on behalf of Klöckner INA Germany?  

A:        [No audible answer].








                                                                            .
. .

Q:        Mr. Brosig, you=re under
oath to tell the truth.

A:        Yes.

Q:        The truth is the truth.

A:        Can you please phrase this question again?

Q:        When you were in Houston during >92 and >93,
and at any other time, soliciting customers, didn=t you
represent to those potential customers that you were representing the interests
of Klöckner INA Germany?

A:        I represented interests of Klöckner INA international group.

Q:        Which includes Klöckner INA Germany, doesn=t it?

A:        Yes.   

An alleged agent may testify to facts concerning his
authority to act on behalf of the principal. 
See Cook v. Hamer, 309 S.W.2d 54, 58 (Tex. 1958).  However, we find that Brosig=s broad assertion that he represented
the interests of Klöckner INA international group does not establish a
sufficient factual basis to prove an agency relationship.  Moreover, to the extent that appellants= argument can be construed as an
assertion that Brosig=s representations to the Texas engineering firms gave him
apparent authority to act on behalf of Klöckner INA, we note that only an
alleged principal=s words or conduct that are represented to the third party
can clothe an alleged agent with apparent authority.  BML Stage Lighting, Inc. v.
Mayflower Transit, Inc., 14 S.W.3d 395, 401 (Tex. App.CHouston [14th Dist.] 2000, pet.
denied).  Therefore, an agency
relationship cannot be established through any representations that Brosig made
to the Texas engineering firms. 

4.         AIndispensable@ Agent Theory 

In further support of their claim of agency, appellants
contend that Klöckner  Industrial was an Aindispensable@ agent of Klöckner INA because,
without Klöckner Industrial, Klöckner INA could not (1) legally export U.S.Bmanufactured machinery and equipment
abroad, or (2) obtain financing from the U.S. governmentBbacked Exim Bank to ship U.S. manufactured
goods overseas for use on Klöckner INA projects.  








Brosig testified that on certain projects in which Klöckner
INA was involved in  construction of the
project, Klöckner Industrial would assist Klöckner INA=s foreign customer in obtaining U.S.
financing so that the foreign customer could purchase U.S. machinery and
equipment to be used during construction. 
On these projects, Klöckner Industrial would also serve as Aexporter of record.@ 
Brosig testified that United States law requires the Aexporter of record@ to be an American company, and that
Exim Bank financing is only available when the Aexpert of record@ is an American company.  Therefore, appellants contend that Klöckner
Industrial, as an American company, performed an Aindispensable@ function for Klöckner INA. 

The record clearly establishes that on certain occasions,
Klöckner Industrial performed a beneficial function for Klöckner INA.  But the mere existence of a subsidiary
corporation that performs a beneficial function for the parent does not
automatically establish the existence of an agency relationship.  Where, as here, there is an absence of any
evidence to show that the parent controls the subsidiary=s work, we do not presume the
existence of an agency relationship.  See
Schultz, 956 S.W.2d at 760 (stating that an agency relationship will not be
presumed).

After reviewing all of the evidence, we conclude that there
is some evidence supporting the trial court=s implied finding that Klöckner
Industrial was not acting as the agent of Klöckner INA when it contacted the
Texas engineering firms.  See Lee
Lewis Constr., 70 S.W.3d at 782B83. 
Moreover, we conclude that the trial court=s implied finding that Klöckner
Industrial was not the agent of Klöckner INA with respect to these contacts is
not manifestly unjust.  See Pool,
715 S.W.2d at 635.  Therefore, we find
that the evidence is legally and factually sufficient to support the trial
court=s implied finding that no agency
relationship existed with respect to Klöckner Industrial=s contacts with the Texas engineering
firms.  

Accordingly, we overrule appellants= second issue.   








VII. 
General Jurisdiction

In their third issue, appellants contend that the Texas
contacts of Klöckner Industrial and UAT, combined with the singular direct
contact by Klöckner INA=s former CEO, support a finding that Klöckner INA and
Klöckner & Co. are subject to the general jurisdiction of Texas
courts.  However, because we have
determined that the Texas contacts of Klöckner Industrial and UAT cannot be imputed
to Klöckner INA and Klöckner & Co. for jurisdictional purposes, the issue
is narrowed to whether Klöckner INA=s single contact with Texas by
Klöckner INA=s former CEO is sufficient to support
general jurisdiction.

Applying the guidelines for analyzing general
jurisdiction,  we conclude that this
single Texas contact is not the kind of continuous and systematic general
business activity that is necessary to justify the assertion of general
jurisdiction.  See Helicopteros,
466 U.S. at 416 (concluding that a single business trip to Texas for the
purpose of negotiating a contract could not be regarded as a contact of a
continuous and systematic nature). 
Accordingly, we find there is no basis for the assertion of general jurisdiction
over the Klöckner defendants and overrule appellants= third issue.[5]

VIII.  Conclusion








We hold that because appellants failed to present the Asingle business enterprise@ theory to the trial court, they have
waived their contention that the German entities operate as a single business
enterprise.  We further hold that there
is some evidence to support the trial court=s implied finding that Klöckner
Industrial is not the agent of Klöckner INA, and that this finding is not
against the great weight and preponderance of the evidence.  Accordingly, we conclude that the Texas
contacts of Klöckner Industrial and UAT cannot be imputed to the Klöckner
defendants under either a single business enterprise theory or an agency
theory.   

Having concluded that the Texas contacts of Klöckner
Industrial and UAT cannot be imputed to the Klöckner defendants, the only
relevant Texas contact for jurisdictional purposes is the single visit to Texas
by Klöckner INA=s former CEO.  We hold
that this single contact is insufficient to support general jurisdiction over
the Klöckner defendants.  Accordingly, we
affirm the trial court=s judgment granting the special appearances of the Klöckner
defendants.

 

/s/        Charles W. Seymore

Justice

 

Judgment rendered
and Opinion filed August 18, 2005.

Panel consists of
Chief Justice Hedges and Justices Fowler and Seymore.

 

 











[1]  Klöckner INA
was owned 100% by Klöckner & Co. until 1996, when Klöckner & Co. sold
75% of Klöckner INA to NUKEM Group. 
NUKEM Group subsequently purchased the remaining 25% of Klöckner INA in
1998.





[2]  The record
further contains a memo and a fax sent from Brosig to Gunther Hering regarding
Haliburton Co.=s interest in funding certain transactions.  However, we find no evidence that these
documents were written for or sent to Haliburton Co. in Texas.





[3]  Brosig
testified that Klöckner Industrial sought to work on the Bolivian project with
Brown & Root after the plans to work on the project with Hudson Engineering
did not come to fruition.





[4]  Air Sea and
Panalpina Gabon are both subsidiaries of Panalpina World Transport, Inc.





[5]  Having
concluded that the evidence fails to establish that the Klöckner defendants had
minimum contacts with Texas, we do not reach appellants= fourth issue addressing the Afair play and substantial justice@ prong of the personal jurisdiction analysis.  See Guardian Royal, 815 S.W.2d at 228
(AOnce it has been determined that the nonresident
defendant purposefully established minimum contacts with the forum state, the
contacts are evaluated in light of other factors to determine whether the
assertion of personal jurisdiction comports with fair play and substantial
justice.@).